# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RIVER VALLEY INGREDIENTS, LLC, TYSON POULTRY, INC., and TYSON FARMS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> AMERICAN PROTEINS, INC. n/k/a CROSSROADS PROPERTIES A, INC., AMPRO PRODUCTS, INC. n/k/a CROSSROADS PROPERTIES B, INC., GEORGIA FEED PRODUCTS COMPANY, L.L.C. n/k/a CROSSROADS PROPERTIES C, LLC, THOMAS N. ("TOMMY") BAGWELL, DON MABE, MARK HAM, and MIKE HULL, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) C.A. No. 19-2358-RGA <br> ) <br> ) **PUBLIC VERSION** <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## OPENING BRIEF IN SUPPORT OF PLAINTIFFS' MOTION TO REMAND

OF COUNSEL:

Edward S. Sledge IV
Whitt Steineker
Zachary A. Madonia
Hillary C. Campbell
K. Laney Gifford
BRADLEY ARANT BOULT CUMMINGS LLP
1819 Fifth Avenue North
Birmingham, Alabama 35203
(205) 521-8000
esledge@bradley.com
wsteineker@bradley.com
zmadonia@bradley.com
hcampbell@bradley.com
lgifford@bradley.com

Stephen B. Brauerman (#4952)
Sarah T. Andrade (#6157)
BAYARD, P.A.
600 North King Street, Suite 400
Wilmington, Delaware 19801
(302) 655-5000
sbrauerman@bayardlaw.com
sandrade@bayardlaw.com

*Attorneys for Plaintiffs River Valley Ingredients, LLC, Tyson Poultry, Inc., and Tyson Farms, Inc.*

January 27, 2020

**TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................................................... i

TABLE OF AUTHORITIES ........................................................................................................ ii

PRELIMINARY STATEMENT ................................................................................................... 1

SUMMARY OF ARGUMENT ..................................................................................................... 2

STATEMENT OF RELEVANT FACTS ...................................................................................... 2

ARGUMENT .................................................................................................................................. 4

      I.      Remand is required because Mabe is bound by the forum selection clause contained in the Asset Purchase Agreement. .......................................................... 5

            A.      Mabe is bound by the Asset Purchase Agreement's forum selection clause. ................................................................................................................ 5

            B.      Mabe waived his right to remove this case. ............................................... 9

      II.     Remand separately is warranted because the API entities are bound by the Asset Purchase Agreement's forum selection clause, and there is an available Delaware state court in which to litigate. ............................................................... 11

      III.    Defects in the notice of removal require remand. ............................................... 12

CONCLUSION ............................................................................................................................ 14

CERTIFICATE OF SERVICE .................................................................................................... 15

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alford v. Chevron U.S.A. Inc.*,
  No. CIV.A. 13-5457, 2014 WL 37600 (E.D. La. Jan. 6, 2014) ................................................13

*Baker v. Impact Holding, Inc.*,
  C.A. No. 4960-VCP, 2010 WL 1931032 (Del. Ch. May 13, 2010) .......................................6, 7

*Capital Grp. Cos., Inc. v. Armour*,
  C.A. No. 422-N, 2004 WL 2521295 (Del. Ch. Oct. 29, 2004) ....................................4, 6, 7, 11

*Carlyle Inv. Mgmt., L.L.C. v. Carlyle Capital Corp.*,
  800 F. Supp. 2d 639 (D. Del. 2011) ............................................................................4, 10, 11

*Carlyle Inv. Mgmt. LLC v. Moonmouth Co. SA*,
  779 F.3d 214 (3d Cir. 2015) .....................................................................................................5

*Chandler v. Whiting Oil & Gas Corp.*,
  No. CV16-161-BLG-SPW-TJC, 2017 WL 3131108 (D. Mont. June 19, 2017) ....................13

*Diversey, Inc. v. Maxwell*,
  798 F. Supp. 2d 1004 (E.D. Wis. 2011) .................................................................................12

*Foster v. Chesapeake Ins. Co., Ltd.*,
  933 F.2d 1207 (3d Cir. 1991) ...................................................................................................4

*Gratz v. Murchison*,
  130 F. Supp. 709 (D. Del. 1955) ............................................................................................13

*Hadley v. Shaffer*,
  No. Civ.A. 99-144-JJF, 2003 WL 21960406 (D. Del. Aug. 12, 2003) ....................................5

*ING Bank, FSB. v. Palmer*,
  No. 09-CV-897, 2010 WL 3907825 (D. Del. Sept. 29, 2010) ..................................................4

*J.H. v. City of Philadelphia*,
  No. CV 17-3520, 2018 WL 451636 (E.D. Pa. Jan. 17, 2018) ................................................12

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
  511 U.S. 375 (1994) ..................................................................................................................4

*Lewis v. Rego Co.*,
  757 F.2d 66 (3d Cir. 1985) .....................................................................................................13

*M/S Bremen v. Zapata Off–Shore Co.*,
    407 U.S. 1 (1972), *overruled on other grounds by Lines v. Chasser*, 490 U.S.
    495 (1989) ................................................................................................................4

*McWane, Inc. v. Lanier*,
    C.A. No. 9488-VCP, 2015 WL 399582 (Del. Ch. Jan. 30, 2015) .........................................6, 7

*New Jersey v. Merrill Lynch & Co.*,
    640 F.3d 545 (3d Cir. 2011)................................................................................................9, 10

*Ninespot, Inc. v. Jupai Holdings Ltd.*,
    No. 18–114, 2018 WL 3626325 (D. Del. July 30, 2018) ............................................5, 6, 7, 11

*Prize Frize, Inc. v. Matrix (U.S.) Inc.*,
    167 F.3d 1261 (9th Cir. 1999) (*superseded by statute on other grounds as
    stated in Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 681 (9th
    Cir. 2006))...................................................................................................................12

*Spring & Assocs., Inc. v. Johnson*,
    No. Civ.A. 04-1555-KAJ, 2005 WL 1384686 (D. Del. May 6, 2005) ....................................13

*Weygandt v. Weco, LLC*,
    C.A. No. 4056-VCS, 2009 WL 1351808 (Del. Ch. May 14, 2009) ......................................6, 9

**Statutes**

28 U.S.C. § 1441(a) ........................................................................................................................4

28 U.S.C. § 1446............................................................................................................................12

28 U.S.C. § 1446(a) .......................................................................................................................12

28 U.S.C. § 1446(b)(2)(A)..............................................................................................................12

28 U.S.C. § 1448............................................................................................................................12

**Other Authorities**

13E Charles Alan Wright & Arthur R. Miller, Federal Practice and
    Procedure § 3733 (3d ed. 1998)......................................................................................13

Plaintiffs River Valley Ingredients, LLC (f/k/a Tyson Blending, LLC), Tyson Poultry, Inc., and Tyson Farms, Inc. (collectively "Tyson") respectfully submit this opening brief in support of their motion to remand this action to the Delaware Superior Court.

## PRELIMINARY STATEMENT

Defendant Don Mabe improperly removed this action against the provisions of a valid, binding forum selection clause. This action arises because defendants American Proteins, Inc. (n/k/a Crossroads Properties A, Inc.) ("American Proteins"), AMPRO Products, Inc. (n/k/a Crossroads Properties B, Inc.) ("AMPRO"), Georgia Feed Products Company, L.L.C. (n/k/a Crossroads Properties C, LLC) ("Georgia Feed"),[1] Thomas N. Bagwell, Don Mabe ("Mabe"), Mark Ham, and Mike Hull[2] (collectively, "Defendants") fraudulently induced Tyson into purchasing API's poultry-rendering facilities and operations at a substantially inflated price. Defendants perpetrated this fraud through an elaborate scheme to hide (a) decades-long fraudulent rendering practices; (b) manipulated energy cost reconciliations with raw material suppliers; and (c) the deteriorating state of certain API facilities, all of which had a significant, negative impact on the financials Tyson reasonably relied upon in valuing the deal. Mabe was involved in it all and received large sums of money from the inflated price Tyson paid.

The Asset Purchase Agreement[3] governing the transaction includes a forum selection clause that requires litigation of all disputes related to the Asset Purchase Agreement (including fraud and breach of contract claims) in ***Delaware state court*** where, as here, the forum is available

---

[1] American Proteins, AMPRO, and Georgia Feed will be referred to herein collectively as "API."

[2] Thomas N. Bagwell, Don Mabe, Mark Ham, and Mike Hull will be referred to collectively herein as the "API Executives."

[3] "Asset Purchase Agreement" refers to the Asset Purchase Agreement by and among Tyson Poultry, Inc., American Proteins, AMPRO, and Georgia Feed Products, dated May 14, 2018, under which Tyson paid Defendants over $825 million for certain assets and operations, including the multiple poultry rendering facilities (and related intangible assets) at the heart of this litigation.

1

to adjudicate the dispute.  Mabe removed this action to this Court based on alleged diversity of citizenship despite that express provision from the very same agreement that unjustly enriched him.  The forum selection clause requires this Court remand this action to the Delaware Superior Court.  Remand is also warranted because Mabe's notice is facially and fatally defective.

## SUMMARY OF ARGUMENT

Remand is required for several reasons:

1.    Mabe, as a non-signatory defendant of the Asset Purchase Agreement, is nevertheless bound by the forum selection clause because it is valid, he is closely related to the agreement, and the claims at issue arise from his standing relative to the agreement.  Bound by the forum selection clause, Mabe waived his right to remove this action from the Delaware Superior Court.

2.    Each of the API entities, as signatories to the Asset Purchase Agreement, are also bound by the forum selection clause, which mandates they litigate in the "available" Delaware Superior Court.

3.    Mabe's notice of removal is facially and fatally defective.

## STATEMENT OF RELEVANT FACTS

This action arises because Defendants fraudulently induced Tyson into purchasing API's poultry-rendering facilities at a substantially inflated price by concealing several material facts, including API's decades-long fraudulent rendering practices and how these practices impacted the relied upon financials.  Mabe, as American Proteins' longtime CEO with shared responsibility over API's rendering operations, was fully aware of and in fact directed API's fraudulent rendering practices that for decades violated both customer contracts and applicable law.  (D.I. 5-2 at ¶¶ 16, 51–54).  At least two API employees raised concerns about API's rendering practices to Mabe.  (*Id.* at ¶¶ 51–55).  Mabe instructed one of those employees to lie and indicated that the employee

2

would be fired if he told the truth.  (*Id.* at ¶ 54).  And later, as a member of American Proteins' board of directors, Mabe was privy to discussions among API's leadership confirming customer contracts and relevant law prohibited these rendering practices.  (*Id.* at ¶ 66).  Yet, he conspired with the API Executives in their frantic endeavor to cleanse these practices in the lead up to the transaction with Tyson.  (*Id.* at ¶¶ 143–47).

Despite being fully aware of these illicit practices and, in fact, leading API through its implementation of them, Mabe never disclosed API's history of fraudulent rendering practices or their impact on API's financials to Tyson.  (*Id*. at ¶ 138).  Instead, as a member of American Proteins' board of directors, Mabe approved the sale of the API business to Tyson at a price he knew was predicated upon API financial results achieved through fraud.  (*Id*. at ¶ 21(b)).  Mabe directly benefited from the transaction as a shareholder of American Proteins, (D.I. 5-2, Exhibit A at Schedule 4.4), who received a portion of the fraudulently inflated purchase price that Tyson paid API (*id*. at ¶¶ 16, 21(b), 22).

The Asset Purchase Agreement contains a forum selection clause that requires all claims asserted here to be litigated in Delaware state court:

> **Governing Law; Venue**. This Agreement (and all claims, controversies and causes of action relating thereto or arising therefrom or in connection therewith, whether in contract, tort or otherwise) shall be interpreted, construed and governed by and enforced in accordance with the laws of the State of Delaware without regard to the conflicts of laws rules thereof. Each of the Parties (i) irrevocably consents to the service of the summons and complaint and any other process in any action or Proceeding relating to the transactions contemplated hereby, on behalf of itself or its property, in accordance with Section 11.5 or in such other manner as may be permitted by Law, of copies of such process to such party, and nothing in this Section 11.5 shall affect the right of any Party to serve legal process in any other  manner permitted by Applicable Law, *(ii) irrevocably and unconditionally consents and submits itself and its property in any action or Proceeding to the exclusive general jurisdiction of the courts of the State of Delaware or, if unavailable, the federal court in the State of Delaware, in each case sitting in Wilmington, Delaware, in the event any dispute arises out of this Agreement or the transactions contemplated hereby, or for recognition and enforcement of any*

3

> *judgment in respect thereof*, (iii) agrees that it shall not attempt to deny or defeat such personal jurisdiction by motion or other request for leave from any such court, ***(iv) agrees that any actions or Proceedings arising in connection with this Agreement or the transactions contemplated hereby shall be brought, tried, and determined only in such courts***, ***(v) waives any objection that it may now or hereafter have to the venue of any such action or Proceeding in any such court or that such action or Proceeding was brought in an inconvenient court and agrees not to plead or claim the same***, and (vi) agrees that it shall not bring any action relating to this Agreement or the transactions contemplated hereby in any court other than the aforesaid courts.

(D.I. 5-2, Exhibit A at § 11.5 (emphasis added)).

Pursuant to this clause, Tyson filed this action in the Delaware Superior Court on December 18, 2019, asserting claims for fraud in the inducement and civil conspiracy against all Defendants, unjust enrichment against the API Executives, and breach of contract against API. On December 27, 2019, Mabe removed the action to this Court. All Defendants have been served. (D.I. 6).

## ARGUMENT

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). In accordance with this recognized principle, the federal removal statute, 28 U.S.C. § 1441(a), "is strictly construed, requiring remand to state court if any doubt exists over whether removal was proper." *Carlyle Inv. Mgmt., L.L.C. v. Carlyle Capital Corp.*, 800 F. Supp. 2d 639, 644 (D. Del. 2011). The removing party bears the burden of establishing federal jurisdiction. *See id.* This "burden is a high one when [a party] seek[s] to avoid a forum selection clause." *Id.* (citing *M/S Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 15 (1972), *overruled on other grounds by Lines v. Chasser*, 490 U.S. 495 (1989); *ING Bank, FSB. v. Palmer*, No. 09-CV-897, 2010 WL 3907825, at *1 (D. Del. Sept. 29, 2010) (holding that a strong presumption exists in favor of enforcing a forum selection clause)). Although a forum selection clause does not deprive a federal court of subject matter jurisdiction, a court should decline to exercise jurisdiction where a forum selection clause applies. *See Foster v. Chesapeake Ins. Co.,*

4

*Ltd.*, 933 F.2d 1207, 1212 n.7 (3d Cir. 1991). "Forum selection clauses are presumptively valid and have been regularly enforced" in Delaware. *Capital Grp. Cos., Inc. v. Armour*, No. CIV. A. 422-N, 2004 WL 2521295, at *6 (Del. Ch. Oct. 29, 2004, revised Nov. 3, 2004).

**I.    Remand is required because Mabe is bound by the forum selection clause contained in the Asset Purchase Agreement.**

The Asset Purchase Agreement's forum selection clause states that each party "submits itself and its property in any action or Proceeding to the exclusive general jurisdiction of the courts of the State of Delaware or, if unavailable, the federal court in the State of Delaware …." (D.I. 5-2, Exhibit A at § 11.5). As a non-signatory to the Asset Purchase Agreement, Mabe is bound by this valid forum selection clause because Mabe is "closely related" to the Asset Purchase Agreement from which Tyson's claims against him arise. Mabe waived his right to remove this action and is required to litigate in Delaware Superior Court.

**A.    Mabe is bound by the Asset Purchase Agreement's forum selection clause.**

Mabe is bound by the forum selection clause. Under Delaware law, a party may be bound by a forum selection clause even if the party—like Mabe in this case—did not sign the agreement containing the clause. "[A] three-part test is used to determine if a non-signatory party is bound by a forum selection clause." *Ninespot, Inc. v. Jupai Holdings Ltd.*, No. 18–114, 2018 WL 3626325, at *4 (D. Del. July 30, 2018). Courts consider whether: (1) "the forum selection clause is valid," (2) the non-signatory is either "a third-party beneficiary of the agreement or closely related to the agreement," and (3) "the claim at hand arise[s] from the non-signatory's status related to the agreement[.]" *Carlyle Inv. Mgmt. LLC v. Moonmouth Co. SA*, 779 F.3d 214, 218 (3d Cir. 2015); *see also, e.g.*, *Ninespot, Inc.* 2018 WL3626325, at *4; *Hadley v. Shaffer*, No. Civ.A. 99-

5

144-JJF, 2003 WL 21960406, at *4 (D. Del. Aug. 12, 2003).[4] "If each of the answers to the three-part test is affirmative, then the party is bound by the forum selection clause." *Ninespot, Inc.*, 2018 WL 3626325, at *4.

Delaware state and federal courts routinely hold non-signatories to an agreement bound by a forum selection clause under this test. For example, in *Ninespot, Inc.*, this Court found that a non-signatory was bound by a forum selection clause contained within the transaction agreement. *See id.* at *4–5. Specifically, the Court found that the non-signatory was bound because "it stood to receive a direct benefit of shares … from the completion of the Stock Purchase Agreement[, and] [t]he receipt of a direct benefit ma[de] [the non-signatory] 'closely related' to the Stock Purchase Agreement." *Id.*; *see also McWane, Inc.*, 2015 WL 399582, at *7 (finding non-signatory shareholders to a merger agreement were bound by a forum selection clause where they received a direct benefit from the sale of their stock).[5] The Court here should find that Mabe is bound by the Asset Purchase Agreement's forum selection clause because each of the three requirements is

---

[4] Delaware state courts refer to this test as the doctrine of equitable estoppel. *See McWane, Inc. v. Lanier*, No. C.A. No. 9488-VCP, 2015 WL 399582, at *7 (Del. Ch. Jan. 30, 2015).

[5] Delaware courts take a broad view of what constitutes a direct benefit for purposes of determining if a non-signatory is closely related to an agreement such that the non-signatory is bound by a forum selection clause contained in that agreement. *See, e.g.*, *Baker v. Impact Holding, Inc.*, No. C.A. No. 4960-VCP, 2010 WL 1931032, at *4 (Del. Ch. May 13, 2010) (finding non-signatory to stockholders agreement directly benefited from agreement and was therefore bound by forum selection clause where agreement gave non-signatory a "right to a seat on the board of directors"); *Weygandt v. Weco, LLC*, C.A. No. 4056-VCS, 2009 WL 1351808, at *5 (Del. Ch. May 14, 2009) (finding non-signatory to asset purchase agreement bound by forum selection clause where the agreement's terms required the plaintiff to enter into a lease agreement with the non-signatory; the lease itself provided a direct benefit to the non-signatory); *Capital Grp. Cos., Inc.*, 2004 WL 2521295, at *1–7 (holding non-signatory to an agreement was bound by forum selection clause where non-signatory obtained a "direct, beneficial interest" in individual stock that was allowed to be transferred into a joint trust for the non-signatory and another party under the terms of the agreement).

satisfied.

***First***, "[f]orum selection clauses are presumptively valid and have been regularly enforced" in Delaware. *Capital Grp. Cos., Inc.*, 2004 WL 2521295, at *6; *see also Ninespot*, 2018 WL 3626325, at *4 ("Forum selection clauses carry a high degree of presumed validity."). Mabe has no basis to refute the presumed validity of the Asset Purchase Agreement's forum selection clause.

***Second***, Mabe is closely related to the Asset Purchase Agreement. A non-signatory is considered closely related to an agreement where he or she receives a direct benefit from the agreement or if it was foreseeable that the non-signatory would be bound by the agreement. *See Baker*, 2010 WL 1931032, at *4; *Capital Grp. Cos., Inc.*, 2004 WL 2521295, at *5. In *McWane, Inc.*, the Delaware Chancery Court found non-signatory shareholder defendants received a direct benefit from the agreement at issue via money received from the sale of their stock and a contingent interest in a portion of an escrow account. *McWane, Inc.*, 2015 WL 399582, at *7. Because the defendants received a direct benefit from the agreement, they were closely related to the agreement and were bound by the agreement's forum selection clause. *Id.*

Mabe satisfies the "direct benefit" and "foreseeability" prong, either of which is independently sufficient to bind him to the forum selection clause. Here, like the non-signatory shareholder defendants in *McWane, Inc.*, Mabe received a direct benefit from the Asset Purchase Agreement. Mabe owned ■ of the shares of American Proteins, Inc., which owned ■ of the shares of AMPRO Products, Inc. and was the sole member of Georgia Feed Products Company, L.L.C. (D.I. 5-2, Exhibit A at Schedule 4.4). Tyson alleged that Mabe received a portion of the purchase price as a result of his stock ownership in API. (D.I. 5-2 at ¶¶ 16, 21(b), 22). That constitutes a direct benefit that satisfies the "closely related" element. *See McWane, Inc.*, 2015

7

WL 399582, at *7.

While receiving a direct benefit is sufficient to bind Mabe to the forum selection clause, it was also foreseeable that Mabe would be bound by the clause.  Tyson alleged an extensive pattern of fraudulent conduct on behalf of Mabe with respect to the negotiations related to, and the due diligence period leading up to, the transaction with Tyson, including the fact that Mabe was privy to discussions among API's leadership confirming customer contracts and relevant law prohibited API's rendering practices.  (D.I. 5-2 at ¶ 66).  Mabe also conspired with the API Executives to conceal those practices and their impact on the financials relied upon by Tyson.  (*Id.* at ¶¶ 143–47).  Further, Mabe assented to the Asset Purchase Agreement as a member of American Proteins' board of directors.  (*Id.* at ¶ 21(b)).  Given Mabe's participation in the conduct aimed at fraudulently inducing Tyson to enter into the Asset Purchase Agreement at an inflated price and his written approval of the Asset Purchase Agreement, it was foreseeable that he would be bound by the Asset Purchase Agreement's forum selection clause.

*Finally*, the claims asserted against Mabe arise out of his standing with respect to the Asset Purchase Agreement.  Mabe was fully aware of and directed API's fraudulent rendering practices that for decades violated both customer contracts and applicable law.  (D.I. 5-2 at ¶¶ 16, 51–54).  At least two API employees raised concerns about API's rendering practices to Mabe.  (*Id.* at ¶¶ 51–55).  Mabe instructed one of those employees to lie and indicated that the employee would be fired if he told the truth.  (*Id.* at ¶ 54).  And later, as a member of American Proteins' board of directors, Mabe was privy to discussions among API's leadership confirming customer contracts and relevant law prohibited these rendering practices and conspired with the API Executives in their frantic endeavor to cleanse those practices and their impact on financials in the lead up to the transaction with Tyson.  (*Id.* at ¶¶ 66, 143–47).

Despite being fully aware of these illicit practices and, in fact, leading API through its implementation of them, Mabe made no effort to inform Tyson of API's fraudulent rendering practices or their impact on API's financials before Tyson agreed to the Asset Purchase Agreement. (*Id*. at ¶ 138). Instead, Mabe assented to the Asset Purchase Agreement knowing that the purchase price was based upon inflated, historical financial results achieved by wrongful rendering practices and received a direct benefit by doing so. (*Id.* at ¶¶ 16, 21(b), 22). Tyson seeks to recover the amount by which Mabe was unjustly enriched after API transferred to him his portion of the cash proceeds fraudulently obtained under the Asset Purchase Agreement. (*See id.* at Count III). In other words, Tyson would not have any claims against Mabe but for the Asset Purchase Agreement and his relationship to it. *See Weygandt*, 2009 WL 1351808, at *4 n.15 (recognizing that the meaning of the third prong of the analysis "is that the agreement containing the forum selection clause must also be the agreement that gives rise to the substantive claims brought by or against a non-signatory in order for the forum selection clause to be enforceable against the non-signatory"). Because each of the requirements of the test is satisfied, Mabe is bound by the Asset Purchase Agreement's forum selection clause.

### B. Mabe waived his right to remove this case.

Because Mabe is bound by the forum selection clause, he waived his right to remove this case to federal court. "[A] defendant can contractually waive his right to remove … an action brought … in state court" by agreeing to a forum selection clause, if the clause's "plain and ordinary meaning" amounts to such a waiver. *New Jersey v. Merrill Lynch & Co.*, 640 F.3d 545, 548 (3d Cir. 2011) (alterations in original) (citation and quotation marks omitted). In *New Jersey v. Merrill Lynch & Co.*, the forum selection clause at issue stated that "[i]n connection with any dispute, controversy or claim arising out of ... [this Agreement], each of the parties hereto agrees

9

... that exclusive jurisdiction and venue shall lie in the appropriate courts of the State [of] New Jersey." *Id.* at 548–49 (alterations in original). The Third Circuit determined that the plain and ordinary meaning of the phrase "appropriate courts *of* the State of New Jersey" included *only* New Jersey state courts. *Id.* (rejecting the argument that the phrase included both New Jersey state and federal courts and noting that federal courts "may be *in* a state, but they are not *of* that state") (emphasis added) (citation and alterations omitted). As a result, the court found that the parties had contractually waived the right to remove. *Id.*

The Asset Purchase Agreement's forum selection clause plainly waives the right to remove a case properly filed in Delaware state court. The forum selection clause provides that each party "submits itself and its property in any action or Proceeding to the exclusive general jurisdiction of the courts *of* the State of Delaware or, *if unavailable*, the federal court in the State of Delaware …." (D.I. 5-2, Exhibit A at § 11.5 (emphasis added)). In other words, only if the Delaware state courts are "*unavailable*," which is not the case here, are the parties permitted to litigate in Delaware federal court. The forum selection clause further provides that each party "agrees that any actions or Proceedings arising in connection with [the Asset Purchase Agreement] or the transactions contemplated [thereby] shall be brought, tried, and determined *only in such courts*" *i.e.*, the courts of the State of Delaware. (*Id*. (emphasis added)). Because Mabe is bound by the forum selection clause, he "waive[d] any objection that [he] may … have to" litigating in Delaware Superior Court. (*Id.* at § 11.5(v)). By requiring litigation of all actions related to the Asset Purchase Agreement in Delaware state courts—and only in such courts—unless those courts are otherwise unavailable, and by waiving the right to object to litigating in Delaware state court, Mabe waived his right to remove. *See, e.g.*, *Merrill Lynch & Co.*, 640 F.3d 545 at 548; *Carlyle Inv. Mgmt., L.L.C.*, 800 F. Supp. 2d at 644–45.

**II.     Remand separately is warranted because the API entities are bound by the Asset Purchase Agreement's forum selection clause, and there is an available Delaware state court in which to litigate.**

Remand is separately warranted because the API entities are indisputably bound by the Asset Purchase Agreement's forum selection clause; the clause requires the parties to litigate this action in a Delaware state court, if available; and the Delaware Superior Court is available. Accordingly, to enforce that clause as between the API entities and Tyson requires the Court to remand the case to Delaware Superior Court.

*First*, as signatories to the Asset Purchase Agreement, the API entities are indisputably bound by the forum selection clause. *See Carlyle Inv. Mgmt., L.L.C.*, 800 F. Supp. 2d at 645 ("[C]ontractual forum selection clauses are binding on the parties that agree to them."); (*see also* D.I. 5-2 at Exhibit A).[6] The forum selection clause is presumed valid, and the API entities have no basis to refute this presumed validity. *Capital Grp. Cos., Inc.*, 2004 WL 2521295, at *6; *see also Ninespot*, 2018 WL 3626325, at *4.

*Second*, as established above, the forum selection clause requires litigation of all claims related to the Asset Purchase Agreement in "the courts of the State of Delaware or, *if unavailable*, the federal court in the State of Delaware." (D.I. 5-2, Exhibit A at § 11.5(ii) (emphasis added)); *see supra* at 3–4. The API entities waived any objection they may have to litigating in Delaware Superior Court. (D.I. 5-2, Exhibit A at § 11.5(v)).

*Third*, the Delaware Superior Court has jurisdiction over all of Tyson's claims and is an available forum. (D.I. 5-2 at ¶ 19). Although none of the API entities had been served at the time

---

[6] Although non-signatories, the remaining API Executives are also bound by the Asset Purchase Agreement's forum selection clause because they were closely related to the Asset Purchase Agreement and the claims against them arise out of their standing with respect to the Asset Purchase Agreement. *See Ninespot, Inc.*, 2018 WL 3626325, at *4.

11

of removal, and thus did not need to consent to the removal under 28 U.S.C. § 1446(b)(2)(A), all three have now been served. (D.I. 6). Under 28 U.S.C. § 1448, a defendant served post-removal retains its "right to move to remand the case." Courts within this circuit applying section 1448 have held that it confers upon later-served defendants "the ability to essentially veto the removal to federal court." *J.H. v. City of Philadelphia*, No. CV 17-3520, 2018 WL 451636, at *1 (E.D. Pa. Jan. 17, 2018); *see also Diversey, Inc. v. Maxwell*, 798 F. Supp. 2d 1004, 1007 (E.D. Wis. 2011) (recognizing that section 1448 gives "each unserved defendant … the right to veto the removal by moving to remand"). Under the Assert Purchase Agreement, the API entities are required to exercise the option to veto by agreeing that "any actions or Proceedings arising in connection with this Agreement or the transactions contemplated hereby ***shall*** be brought, ***tried,*** and ***determined*** only in" Delaware state court. (D.I. 5-2, Exhibit A at § 11.5(iv) (emphasis added)). Accordingly, enforcement of the forum selection clause requires the Court to remand the case to Delaware Superior Court.

**III.    Defects in the notice of removal require remand.**

Defects in Mabe's notice of removal provide an additional and independent basis for remand. Under 28 U.S.C. § 1446, a notice of removal must contain "a short and plain statement of the grounds for removal," and "all defendants who have been properly joined and served must join in or consent to the removal of the action." 28 U.S.C. § 1446(a) and (b)(2)(A). If fewer than all defendants join in a removal, "the removing party has the burden under section 1446(a) to explain affirmatively the absence of any co-defendants in the notice for removal." *Prize Frize, Inc. v. Matrix (U.S.) Inc.*, 167 F.3d 1261, 1266 (9th Cir. 1999) (*superseded by statute on other grounds as stated in Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 681 (9th Cir. 2006)). The obligation to affirmatively explain why all defendants failed to join in the removal extends to

12

situations where the absence stems from lack of service in the state proceeding.  13E CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3733 (3d ed. 1998) ("[I]f unserved defendants have not joined in the notice of removal, the removing defendants should explain their absence from that paper, in the removal notice."); *Lewis v. Rego Co.*, 757 F.2d 66, 68 (3d Cir. 1985) (recognizing that where a defendant has not been served at the time of removal, "the removal petition will be effective ***provided that it alleges that the defendants who did not join it were not served in the state proceeding***") (emphasis added).  When a removing party fails to explain the absence of any co-defendants in its notice of removal, the notice of removal is **"fatally defective,"** and remand is warranted.  *Gratz v. Murchison*, 130 F. Supp. 709, 713 (D. Del. 1955); *see Spring & Assocs., Inc. v. Johnson*, No. Civ.A. 04-1555-KAJ, 2005 WL 1384686, at *2 (D. Del. May 6, 2005) (finding notice of removal defective where the removing party failed to explain the absence of other defendants).[7]

Here, Mabe's notice of removal fails to explain why his co-Defendants did not join, or why those Defendants were not required to join, in the removal (*see generally* D.I. 5).  This deficiency is fatal and cannot be cured, because Mabe's deadline to amend his notice of removal expired on January 24, 2020.  *See, e.g.*, *Gratz*, 130 F. Supp. at 713 (recognizing deficient notice of removal could not be amended to cure defect after the time to file the petition for removal had expired); *Alford*, 2014 WL 37600, at *6 (same).  Therefore, Mabe's notice of removal is fatally deficient, and the matter must be remanded to the Delaware Superior Court.

---

[7] *See also, e.g.*, *Chandler v. Whiting Oil & Gas Corp.*, No. CV16-161-BLG-SPW-TJC, 2017 WL 3131108, at *3–5 (D. Mont. June 19, 2017) (granting motion to remand where removing defendant failed to explain absence of co-defendant's joinder or consent to removal); *Alford v. Chevron U.S.A. Inc.*, No. CIV.A. 13-5457, 2014 WL 37600, at *6 (E.D. La. Jan. 6, 2014) (granting motion to remand where removing party "offered no explanation for its failure to obtain [a co-defendant's] consent" in its notice of removal).

## **CONCLUSION**

For these reasons, Tyson respectfully requests that the Court remand this action to the Delaware Superior Court.

January 27, 2020

OF COUNSEL:

Edward S. Sledge IV
Whitt Steineker
Zachary A. Madonia
Hillary C. Campbell
K. Laney Gifford
BRADLEY ARANT BOULT CUMMINGS LLP
1819 Fifth Avenue North
Birmingham, Alabama 35203
(205) 521-8000
esledge@bradley.com
wsteineker@bradley.com
zmadonia@bradley.com
hcampbell@bradley.com
lgifford@bradley.com

BAYARD, P.A.

*/s/ Stephen B. Brauerman*
Stephen B. Brauerman (#4952)
Sarah T. Andrade (#6157)
600 North King Street, Suite 400
Wilmington, Delaware 19801
(302) 655-5000
sbrauerman@bayardlaw.com
sandrade@bayardlaw.com

*Attorneys for Plaintiffs River Valley Ingredients, LLC, Tyson Poultry, Inc., and Tyson Farms, Inc.*