# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| RIVER VALLEY INGREDIENTS, LLC, TYSON POULTRY, INC., and TYSON FARMS, INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 19-2358-RGA |
| AMERICAN PROTEINS, INC. n/k/a CROSSROADS PROPERTIES A, INC., AMPRO PRODUCTS, INC. n/k/a CROSSROADS PROPERTIES B, INC., GEORGIA FEED PRODUCTS COMPANY, L.L.C. n/k/a CROSSROADS PROPERTIES C, LLC, THOMAS N. ("TOMMY") BAGWELL, DON MABE, MARK HAM, and MIKE HULL, | ) ) ) ) ) ) ) ) ) ) ) | **PUBLIC VERSION** |
| Defendants. | ) | |

---

## OPENING BRIEF IN SUPPORT OF DEFENDANT AMERICAN PROTEINS, INC. n/k/a CROSSROADS PROPERTIES A, INC.'S MOTION TO DISMISS

OF COUNSEL:

J. Allen Maines
Caroline Johnson Tanner
A. Andre Hendrick
Patrick Reagin
Jacquelyn Thomas Watts
Matthew D. Friedlander
HOLLAND & KNIGHT LLP
Regions Plaza, Suite 1800
1180 West Peachtree Street NW
Atlanta, Georgia 30309
(404) 817-8500

Dated: February 24, 2020
Public version dated: March 2, 2020

Philip A. Rovner (#3215)
Jonathan A. Choa (#5319)
POTTER ANDERSON & CORROON LLP
Hercules Plaza
P.O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com
jchoa@potteranderson.com

*Attorneys for Defendant*
*American Proteins, Inc.*

# TABLE OF CONTENTS

**Page**

I.      BACKGROUND ........................................................................................................1

II.     SUMMARY OF THE ARGUMENT ...............................................................................3

III.    ARGUMENT ...........................................................................................................4

      A.      Count I Alleging Fraud in the Inducement Should be Dismissed Because the
            Complaint Fails to Comply With the Heightened Pleading Requirements
            Mandated by Rule 9(b) .......................................................................................4

            1.      Plaintiffs Are Required to Plead Specific Facts Showing to Whom, by
                  Whom, When, Why, Where and How False Statements Allegedly
                  Were Made. ...............................................................................................4

            2.      The Complaint Cites Unreliable Confidential Sources. ..........................12

            3.      The Complaint is Defective Because it Does Not Allege Damages
                  Arising From Purported Fraud that Differ From Damages for Breach
                  of Contract. ..............................................................................................13

            4.      The APA Excludes Reliance on Extra-Contractual Conduct. ...................14

      B.      Plaintiffs' Civil Conspiracy Claims must be Dismissed. .......................................17

      C.      Count IV Alleging Breach of Contract Must be Dismissed Because Plaintiffs
            Fail to Plead that they Have Incurred or Suffered any Recoverable Losses. .........18

IV.     CONCLUSION .......................................................................................................19

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*3M Co. v. Neology, Inc.*,
No. N18C-07-089, 2019 WL 2714832 (Del. Super. Ct. June 28, 2019) ................................15

*Abbott Labs. v. Owens*,
No. 13C–09–186, 2014 WL 8407613 (Del. Super. Ct. Sept. 15, 2014) ................................17

*ABRY Partners V, L.P. v. F&W Acquisition LLC*,
891 A.2d 1032 (Del. Ch. 2006)................................................................................................16

*Airborne Health, Inc. v. Squid Soap, LP*,
984 A.2d 126 (Del. Ch. 2009)...................................................................................................6

*Amaysing Tech. Corp. v. Cyberair Comms., Inc.*,
No. Civ. A. 19890-NC, 2005 WL 578972 (Del. Ch. Mar. 3, 2005) ........................................18

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).................................................................................................................4

*Bartesch v. Cook*,
941 F. Supp. 2d 501 (D. Del. 2013).........................................................................................12

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007).................................................................................................................4

*Brug v. Enstar Grp., Inc.*,
755 F. Supp. 1247 (D. Del. 1991).............................................................................................17

*In re Burlington Coat Factory Sec. Litig.*,
114 F.3d 1410 (3d Cir. 1997)....................................................................................................5

*Cal. Publ. Empls. Ret. Sys. v. Chubb*,
394 F.3d 126 (3d Cir. 2004)......................................................................................................13

*Christidis v. Frist Pa. Mortg. Trust*,
717 F.2d 96 (3d Cir. 1983)........................................................................................................5

*ChyronHego Corp. v. Wight*,
No. 2017-0548-SG, 2018 WL 3642132 (Del. Ch. July 31, 2018)............................................16

*Collab9, LLC v. En Pointe Techs. Sales, LLC*,
No. N16C-12-032, 2019 WL 4454412 (Del. Super. Ct. Sept. 17, 2019) ................................13

*Cornell Glasgow, LLC v. La Grange Properties, LLC*,
No. N11C–05–016, 2012 WL 2106945 (Del. Super. Ct. June 6, 2012) ..................................14

*DiLeo v. Ernst & Young*,
901 F.2d 624 (7th Cir. 1990) ..................................................................................................5

*Dura Pharm., Inc. v. Broudo*,
544 U.S. 336 (2005)................................................................................................................10

*EZLinks Golf, LLC v. PCMS Datafit, Inc.*,
No. N16C–07–080, 2017 WL 1312209 (Del. Super. Ct. Mar. 13, 2017)..............................14

*Grant v. Turner*,
505 F. App'x 107 (3d Cir. 2012) .............................................................................................4

*Heritage Handoff Holdings, LLC v. Fontanella*,
No. 1:16-CV-00691-RGA, 2019 WL 1056270 (D. Del. Mar. 6, 2019) ................................13

*Hupan v. Alliance One International, Inc.*,
No. N12C-02-171-VLM, 2015 WL 7776659 (Del. Super. Ct. Nov. 30, 2015)......................7

*In re IBP, Inc. Shareholders Litig.*,
789 A.2d 14 (Del. Ch. 2001)...................................................................................................2

*James Julian, Inc. v. Raytheon, Co.*,
499 F. Supp. 949 (D. Del. 1980).............................................................................................17

*Kalmanovitz v. G. Heileman Brewing Co., Inc.*,
595 F. Supp. 1385 (D. Del. 1984)......................................................................................17, 18

*Keystone Foods Holdings Limited (n/k/a Beef Holdings Limited) v. Tyson Foods, Inc.*,
Case 1:19-cv-03888-ALC (S.D.N.Y. May 22, 2019), ECF No. 38.........................................2

*Market America, Inc. v. Google, Inc.*,
C.A. No. 09–494–GMS, 2010 WL 3156044 (D. Del. Aug. 9, 2010) .....................................5

*Novipax Holdings LLC v. Sealed Air Corp.*,
No. N17C–03–1682, 2017 WL 5713307 (Del. Super. Ct. Nov. 28, 2017) ...........................15

*Odrick v. Scully Co.*,
No. CV 17-02566, 2018 WL 6044929 (E.D. Pa. Nov. 19, 2018)............................................1

*Prairie Capital III, L.P. v. Double E. Holding Corp.*,
132 A.3d 35 (Del. Ch. 2015)............................................................................................14, 16

*Simon v. Castello*,
172 F.R.D. 103 (S.D.N.Y. 1997) .......................................................................................6, 11

*Space Hunters, Inc. v. U.S.*,
    500 F. App'x 76 (2d Cir. 2012) ........................................................................11

*Sparton Corp. v. O'Neil*,
    No. 12403–VCMR, 2017 WL 3421076, at *7 (Del. Ch. Aug. 9, 2017)..................16

*St. James Recreation, LLC v. Rieger Opportunity Partners, LLC*,
    No. Civ.A. 19346, 2003 WL 22659875 (Del. Ch. Nov. 5, 2003)...........................15

*Trusa v. Nepo*,
    C.A. No. 12071–VCMR, 2017 WL 1379594 (Del. Ch. Apr. 13 2017).....................7

*Tyson Foods, Inc. v. Keystone Foods Holdings Limited (n/k/a Beef Holdings Limited), et al.*,
    Case 1:19-cv-10125-ALC-GWG (S.D.N.Y. Oct. 31, 2019), ECF No. 1 ................2

*Vichi v. Koninklijke Philips Electronics, N.V.*,
    85 A.3d 725 (Del. Ch. 2014)..................................................................................9

**Other Authorities**

Fed. R. Civ. P. 9(b) ......................................................................................................4

Kevin Mackie, *Successful Short: Why Tyson Came Crashing Down, and What to do From Here*, Seeking Alpha (Feb. 10, 2020),
    https://seekingalpha.com/article/4322845-successful-short-why-tyson-came-crashing-down-and-what-to-from ...................................................................3

# I.    BACKGROUND

This action arises from the purchase by Tyson Poultry, Inc. ("Tyson Poultry") of poultry rendering and blending assets of American Proteins, Inc. ("API"), AMPRO Products, Inc. ("AMPRO"), and Georgia Feed Products Company, L.L.C. ("Georgia Feed") (collectively, the "Seller Entities") pursuant to an Asset Purchase Agreement ("APA") on May 14, 2018.[1] (D.I. 2-2, Ex. B-1, Ex. A). The Complaint alleges Fraud in the Inducement (Count I) and Civil Conspiracy (Count II) against all seven Defendants. Count III purports to plead Unjust Enrichment against four individuals, and Count IV against the three Seller Entities alleges breach of contract. Although the Complaint asserts all four claims on behalf of all three named Plaintiffs, Tyson Poultry is the _only_ plaintiff that was a party to the APA and was the _only_ entity to which warranties purportedly were made by the Seller Entities. Plaintiffs River Valley Ingredients, LLC ("River Valley")— which did not even exist as an legal entity until four days before the execution of the APA[2]—and Tyson Farms, Inc. ("Tyson Farms") did not purchase any assets from any defendant, and received no representations or warranties.

This is not the first time that Tyson has made an acquisition and then, in order to recover and to reduce the purchase price that Tyson had originally offered in order to induce the seller, claimed that the seller breached representations and warranties. In 2018, around the same time as the APA here, Tyson Foods, Inc., the publically-traded parent of all three Plaintiffs in this action,

---

[1]    Following post-Closing name changes, Defendant API is now known as Crossroads Properties A, Inc.; Defendant AMPRO is known known as Crossroads Properties B., Inc.; and Defendant Georgia Feed is now known as Crossroads Properties C, LLC. For ease of reference, the Defendants are referred to herein by their pre-Closing names.

[2]    Federal courts may take judicial notice of matters of public record and documents required by law to be filed publicly, including filings with the state Secretary of State. See Odrick v. Scully Co., No. CV 17-02566, 2018 WL 6044929, at *1, n.4 (E.D. Pa. Nov. 19, 2018) (collecting cases). The Delaware Secretary of State records associated with River Valley demonstrate its formation on May 10, 2018.

purchased Keystone Foods Holding Limited. Keystone has sued Tyson for fraud, breach of contract and breach of the implied covenant of good faith and fair dealing, alleging that after inducing Keystone to sell, Tyson "improperly claimed adjustments of more than" half a billion dollars as an "extreme example of commercial bad-faith" in "just the latest chapter in Tyson's systematic commercial misconduct" and that Tyson "never intended to pay the promised price."[3] Complaint ¶¶ 1-3, 5, 8, *Keystone Foods Holdings Limited (n/k/a Beef Holdings Limited) v. Tyson Foods, Inc.*, Case 1:19-cv-03888-ALC (S.D.N.Y. May 22, 2019), ECF No. 38. The similarities between Keystone and this case are illuminating: Keystone alleges that Tyson never intended to honor the price it agreed to pay, that Tyson instead "strung …[it] along … never letting on that its price commitment was nothing more than elaborate set-up" (*Id.* ¶ 3) and that Tyson's "purported adjustments are a blatant re-trade on a carefully negotiated deal, accomplished through the wholesale, bad-faith reworking of Keystone's historical (and previously unchallenged) accounting practices …." (*Id.* ¶ 5). *See also In re IBP, Inc. Shareholders Litig.*, 789 A.2d 14, 22 (Del. Ch. 2001) (wherein the court stated: "[T]he most important reason that Tyson slowed down the Merger process was different: it was having buyer's regret. Tyson wished it had paid less especially in view of its own compromised 2001 performance[.] . . . After the business decision was made to terminate, Tyson's legal team swung into action. They fired off a letter terminating the Agreement at the same time as they filed suit accusing IBP of fraudulently inducing the Merger that Tyson had once so desperately desired.").[4]

---

[3] Tyson also sued Keystone for breach of warranty *Tyson Foods, Inc. v. Keystone Foods Holdings Limited (n/k/a Beef Holdings Limited), et al.*, Case 1:19-cv-10125-ALC-GWG (S.D.N.Y. Oct. 31, 2019), ECF No. 1.

[4] Tyson's stock recently plummeted from $93/share to $78/share, and its Chief Accounting Officer resigned. According to one short seller's recent analysis Tyson has a "massive debt load and plummeting returns" and "will almost certainly not reach the end of the year having achieved their liquidity target . . . . [A] dividend cut/suspension, credit downgrades, and the like are real

The Complaint here against API distorts and mischaracterizes poultry rendering processes. It depends entirely on incorrect labels and terms as coined, used and understood by API, turning rendering terminology on its head. Tyson literally "declares" what it would have the Court believe to be the law, then it further declares, based on conjecture and speculation, that years prior to the APA, API somehow violated what Tyson incorrectly represents to have been "the law." Tyson does not allege that it has paid any money as a result of API's previous rendering processes, and Tyson completely fails to explain how it has been damaged.

The truth will emerge that Tyson secretly signed up two of API's largest customers, long before their API rendering contracts came up for renewal, offering them ten-year contracts at incredibly low prices. Tyson effectively informed API that it was either going to force API to sell, or put it out of business. Having lost about 50% of its profit, and unable to competitively match Tyson's "curiously low" price, API had no choice but to sell its family-owned business.

This Motion to Dismiss is brought by API pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure because the Complaint fails to allege fraud and conspiracy with the requisite particularity, and because the Seller Entities did not have a contract with either Tyson Farms or River Valley, and therefore could not have breached any warranties to these Plaintiffs or have fraudulently induced them to purchase any assets.

## II.     SUMMARY OF THE ARGUMENT

**1.**     Count I alleging fraudulent inducement should be dismissed because the Complaint fails to comply with the heightened pleading requirements mandated by Rule 9(b). Plaintiffs' fraud allegations are impermissibly group-pled, speculative, and supported by unreliable

---

possibilities." Kevin Mackie, *Successful Short: Why Tyson Came Crashing Down, and What to do From Here*, SEEKING ALPHA (Feb. 10, 2020), https://seekingalpha.com/article/4322845-successful-short-why-tyson-came-crashing-down-and-what-to-from.

confidential sources.  Plaintiffs fail to plead loss causation and seek duplicative damages for fraud and breach of contract.  Each of these defects warrants dismissal as a matter of law.

**2.**     Count II alleging civil conspiracy must be dismissed because Plaintiffs fail to plead a viable underlying fraud claim.  Further, Plaintiffs fail to assert any of the particularized allegations required to support the existence of a conspiracy.

**3.**     Count IV alleging breach of contract must be dismissed because Plaintiffs fail to plead that they have actually incurred or suffered any recoverable Losses under the APA.

## III.     ARGUMENT

### A.     Count I Alleging Fraud in the Inducement Should be Dismissed Because the Complaint Fails to Comply With the Heightened Pleading Requirements Mandated by Rule 9(b).

In addition to the *Iqbal/Twombly*[5] pleading standard, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  Rule 9(b) is designed to compel early dismissal of defective complaints alleging fraud, and failure to properly plead specific facts to satisfy each of these elements requires dismissal of Count I against API.  "The purpose of the heightened pleading requirement in 9(b) is to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants from spurious charges of immoral and fraudulent behavior."  *Grant v. Turner*, 505 F. App'x 107, 111 (3d Cir. 2012) (citation omitted).

### 1.     Plaintiffs Are Required to Plead Specific Facts Showing to Whom, by Whom, When, Why, Where and How False Statements Allegedly Were Made.

---

[5]     *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)); *Twombly*, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level").  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.

Plaintiffs were required to plead specific facts with particularity demonstrating the "who, what, when, where, and how"—"the first paragraph of any newspaper story." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1422 (3d Cir. 1997) (quoting *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)). Rule 9(b) "applies not only to fraud actions under federal statutes, but to fraud claims based on state law." *Christidis v. Frist Pa. Mortg. Trust*, 717 F.2d 96, 99 (3d Cir. 1983).

To state a claim for fraud in the inducement, a plaintiff must allege that:

> (1) the defendant falsely represented or omitted facts that the defendant had a duty to disclose; (2) the defendant knew or believed that the representation was false or made the representation with a reckless indifference for the truth; (3) the defendant intended to induce the plaintiff to act or refrain from acting; (4) the plaintiff acted in justifiable reliance on the representation; and (5) the plaintiff was injured as a result of this reliance.

*See Market America, Inc. v. Google, Inc.*, C.A. No. 09–494–GMS, 2010 WL 3156044, at \*4 (D. Del. Aug. 9, 2010) (citation omitted). A plaintiff must plead "most of [these] elements with particularity." *Id.* (quotation omitted). Specifically, the plaintiff must "allege: (1) the time, place, and contents of the false representation; (2) the identity of the person making the representation; and (3) what the person intended to gain by making the representation." *Id.* (citation omitted). The Complaint before the Court fails to meet these standards and must be dismissed.

      a.    <u>By Lumping Together All of the Defendants Generally and Failing to Distinguish Between Defendants, It Is Impossible to Ascertain to Which Defendant or Defendants Plaintiffs' Allegations Pertain.</u>

Plaintiffs employ impermissible group pleading by employing a "dragnet" tactic of indiscriminately grouping all Defendants into one wrongdoing monolith. The Complaint fails to inform each Defendant of the conduct which constitutes the alleged wrongdoing, and instead relies on blanket references to the conduct of all Defendants as they are defined at the outset in the Complaint. <u>First</u>, the three Plaintiffs conveniently define themselves collectively as "Tyson" and

then proceed to make allegations that "Tyson" was fraudulently induced into paying ████████

under the APA. (D.I. 2-2, Ex. B-1 ¶¶ 116-42). River Valley and Tyson Farms are not parties to

the APA and there are no allegations in the Complaint that either paid any part of the purchase

price or participated in the APA negotiations. Second, Plaintiffs lump Defendant API together

with Defendants AMPRO and Georgia Feed, **defining all three of them collectively as "API."**

The Complaint makes dozens of allegations about "API" rendering it impossible to determine

which of the three Defendants is purportedly responsible for the alleged act. (*Id.*, referring

indiscriminately to "API" at ¶¶ 3, 6, 12, 40, 41, 43, 45, 47, 59, 77, 79, 80, 83, 85, 86, 88, 94, 95,

103-05, 106-09, 112, 135, and 154-65). Third, Plaintiffs then lump API, AMPRO and Georgia

Feed in with all four individual defendants and make numerous additional allegations collectively

about all seven "Defendants" thereby failing to satisfy Rule 9(b)'s particularity standards. (*Id.*,

referring indiscriminately to "Defendants" at ¶¶ 1, 3, 4, 5, 7, 44, 45, 62, 87, 119, 121, 123, 125,

127, 129, 131, 138-42 and 144-47).

Each of the three Plaintiffs are obligated to plead their fraudulent inducement claims

against API, and each other Defendant, with particularity. Generalized allegations that fail to

provide any detail of "what was actually said, who said it, where, or when" are insufficient to

satisfy Rule 9(b). *See Airborne Health, Inc. v. Squid Soap, LP*, 984 A.2d 126, 142-143 (Del. Ch.

2009). "Without this level of detail, which a plaintiff who actually was defrauded should be able

to provide, Rule 9(b) requires dismissal." *Id*. at 143. "[W]here multiple Defendants are alleged

to have committed fraud, the Complaint must 'allege specifically the fraud perpetrated by each

defendant.'" *Simon v. Castello*, 172 F.R.D. 103, 106 (S.D.N.Y. 1997) (quotation omitted).

Plaintiffs' vague and conclusory allegations collectively about "API" and "Defendants" do not

satisfy *Iqbal/Twombly* or Rule 9(b). (*See, e.g.*, D.I. 2-2, Ex. B-1 ¶ 4 ("Defendants feverishly

embarked on a pre-diligence scheme. . . ."); *id.* ¶ 7 ("Defendants actively concealed this report. . . ."); *id.* ¶ 119 ("Defendants knew . . . that API's processing" violated the law.); *id.* ¶ 83 ("API manipulated the monthly energy cost reconciliation process so that it obtained monies from its suppliers of raw materials that it was not owed."); *id.* ¶ 135 ("Upon information and belief, since the transaction closed, API has transferred substantial moneys and property to . . . the API Executives. . . .")).  Plaintiffs cannot, as a matter of law, lump API itself in with all the other Defendants to state a claim for fraud.  *See, e.g., Trusa v. Nepo*, C.A. No. 12071–VCMR, 2017 WL 1379594, at *9 (Del. Ch. Apr. 13 2017) ("A plaintiff cannot lump together defendants but must 'identify specific acts of individual defendants' and 'who made any particular representation.'") (citation omitted); *Hupan v. Alliance One International, Inc.*, No. N12C-02-171-VLM, 2015 WL 7776659, at *12 (Del. Super. Ct. Nov. 30, 2015) ("Plaintiffs cannot satisfy Rules 8 or 9(b) by engaging in the group pleading as to the Monsanto Defendants without providing Monsanto notice of what they allegedly did wrong.").

   b. <u>The Complaint is Too General and Speculative to Support a Fraud Claim.</u>

   Plaintiffs cannot survive the present motion by relying on meaningless, equivocal events and unremarkable purported statements that are as consistent with an honest intent—in fact more so—than with a dishonest one.  Rather, the Complaint must withstand an exacting statement-by-statement analysis.  Plaintiffs' Complaint is riddled with vague references to either accurate or completely benign statements (many made years before this transaction took place and unrelated in time to the alleged fraud or any reliance) which Plaintiffs do not and cannot claim were false when made, or that they were made with the intent to deceive Plaintiffs.  Examples that fall far short of Plaintiffs' burden include allegations that some unidentified API (confusingly defined collectively in the Complaint to include all three Seller Entities) employee "raised concerns" of an unspecified nature prior to the transaction with API's then CEO Mark Ham (D.I. 2-2, Ex. B-1

¶ 51), that unidentified API employees met with Ham about "concerns" to "discuss the need" to remove materials (*Id.* ¶¶ 53, 54), and that Ham and API's CFO, Mike Hull, "attended a meeting" with unidentified API Employees 1, 2 and 4 to discuss the project. (*Id.* ¶ 64). Before Tyson acquired API's assets Ham is alleged to have emailed unidentified API employees describing 2017, the previous year, as a year to "get many projects approved and started . . . that have been 'swept under the carpet' for some time." (*Id.* ¶ 68). Ham "had a call" (*Id.* ¶ 69) and he, Bagwell and Hull "excluded" their emails in the APA from the assets sold to Tyson. (*Id.* ¶ 113). In 2017, also well prior to the closing in 2018, Bagwell supposedly sent Employee 5 two texts reading "I don't want to put too much on the record so I would like to talk to you hopefully tomorrow" (*Id.* ¶ 73), and referring to "the very best Christmas present." (*Id.* ¶ 78).

That these inconsequential statements are not actionable is amplified by the fact that Plaintiffs do not even allege them to be false, or that any Defendant knew them to be false at the time, or that they were made to any of the Plaintiffs, with the intention that Plaintiffs rely on them to their detriment. There is no allegation that Plaintiffs relied on any of these actions or statements, nor could there be since they all occurred long prior to closing and were internal to API. Nor is there any attempt in the Complaint to even allege facts showing that any of these events or statements caused any damage to any of the three Plaintiffs. Presumably these allegations are designed to provoke skepticism about API's executives' "intent" when agreeing to include limited warranties in the APA years later, but such generalities are devoid of substance, and, absent concrete and closer-in-time facts, are immaterial and do not state a claim.

Plaintiffs also complain about API's financial statements, although the Complaint does not allege that they were incorrect or falsely represented API's finances. In fact, the gravamen of Plaintiffs' dissatisfaction is that these financial statements accurately reflected the way API ran its

business, and Plaintiffs' real issue is that they believe API should have run its business differently, and had it done so, API's financial statements might have been different. But there is no allegation they were inaccurate. Predicating a defamatory fraud complaint impugning the reputations of long-time industry executives is spurious, at best, and at worst suggests the pleading is presented for improper purposes and to embarrass and harass the Defendants so that, in order to salvage their reputations, they agree to release the escrow sums to Plaintiffs.

c. <u>Plaintiffs fail to plead loss causation.</u>

None of the Plaintiffs pled any facts demonstrating how any act or omission by API <u>caused</u> their tort damages. "To be actionable, a fraudulent misrepresentation or omission must cause the plaintiff to suffer damages." *Vichi v. Koninklijke Philips Electronics, N.*V., 85 A.3d 725, 815 (Del. Ch. 2014). The necessary causal relationship has two dimensions:

> First, the misrepresentation or omission must be a factual cause of the harm in the sense that the harm would not have occurred but for the misrepresentation or omission. Second, the misrepresentation or omission must be a legal cause of the harm, meaning that it must be a sufficiently significant cause of the harm to impose liability.

*Id.* at 815-16. "[A] fraudulent misrepresentation is a legal cause of a pecuniary loss resulting from action or inaction in reliance upon it if, but only if, the loss might reasonably be expected to result from the reliance." *Id.* at 816 (quotation omitted).

This loss causation requirement frequently "has been analogized to the common law's proximate causation requirement and extended to common law fraud claims." *Id.* at 816. Here, there are no facts set forth in the Complaint showing, with particularity, how API caused a pecuniary loss to Plaintiffs. Plaintiffs instead simply allege in conclusory fashion that they "would not have valued the business at a price over ██████████" had the items in question been disclosed. (D.I. 2-2, Ex. B-1 ¶ 133). Plaintiffs conspicuously do not allege facts showing that the assets actually transferred were not worth what was paid for them. Plaintiffs' purely subjective

9

conjecture about what they "would have paid" fails to support loss causation. Plaintiffs have made not even attempted to explain how any alleged misrepresentations or omissions actually caused them economic damages. Accordingly, Plaintiffs have failed to plead loss causation and the claims should be dismissed. *See, e.g.*, *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 340 (2005) (affirming dismissal for failure to adequately plead loss causation where sole allegation was that plaintiff paid an "inflated" purchase price).[6]

> d. The Complaint Fails to Specify How Each Statement Alleged to Have Been False Was False at the Time it Was Made, and Known to be False by the Speaker.

Plaintiffs are required to allege facts which show that the statements complained about were false when they were made. The Complaint contains no factual allegations that any of the Defendants knew of any illegality in API's processes, or that API's processes did not comply with its customers' requirements. In fact, it is Plaintiffs' own subjective (and incorrect) conclusions about what Plaintiffs profess to be the law, and not any law itself, that forms the basis for this completely unfounded claim. Nowhere does the Complaint set forth facts demonstrating that the Seller Entities' representations in the APA were known to be false at the time they were made. Although the Complaint conveys Plaintiffs' opinion about what Plaintiffs think the law permits, the allegation is nothing more than that—an opinion, and an incorrect one at that. (D.I. 2-2, Ex. B-1 ¶¶ 36-37). The Complaint does not point to anything conclusive that API was in violation of any laws governing its processes, which themselves are inadequately referenced, and in fact those laws were changed over the twenty year time period covering the Complaints' allegations. There

---

[6] In *Dura*, the Supreme Court recognized the common law roots of securities fraud causes of action in evaluating the adequacy of the loss causation allegation. *See id.* at 344 ("Given the common-law roots of the securities fraud action (and the common-law requirement that a plaintiff show actual damages), it is not surprising that other Courts of Appeals have rejected the Ninth Circuit's 'inflated purchase price' approach to proving causation and loss.").

is not even any allegation that any Defendant knew of, or correctly understood, the law. Plaintiffs fail to allege any facts to explain how the representations made by the Seller Entities were not accurate, or that they were known to be false when they were included in the APA in May 2018.

Plaintiffs may not "base claims of fraud on speculation and conclusory allegations." *Simon v. Castello*, 172 F.R.D. 103, 106 (S.D.N.Y. 1997) (quotation omitted). "A Plaintiff is still required to allege facts that give rise to a strong inference of fraudulent intent." *Id.* (quotation omitted); *see also Space Hunters, Inc. v. U.S.*, 500 F. App'x 76, 79 (2d Cir. 2012) ("[M]ere general allegations that there was fraud, corruption or conspiracy or characterizations of acts or conduct in these terms are not enough [to survive a Rule 12(b)(6) motion] no matter how frequently repeated.").

The bare labels and conclusions asserted by Plaintiffs in citing to APA representations and warranties and alleging without any factual predicate that "Defendants knew that representation was false" are precisely what the Second Circuit prohibited in *Space Hunters*. (D.I. 2-2, Ex. B-1 ¶¶ 118-32). Plaintiffs do not allege any facts that would support that any Defendants knew, in May 2018, that API's business practices violated any applicable statute, regulation, or contractual commitment, or that API's books and financial records were incomplete or incorrect (in fact, API's business practices did not violate applicable rules and its books and financial records are correct). Plaintiffs' allegations do not show a strong inference of fraudulent intent, and their fraud claims must be dismissed as a matter of law.

> e. <u>Alleged Statements Not Made to the Plaintiffs, or Absent Any Allegation of Intent or Reliance By the Plaintiffs, Are Not Actionable.</u>

Plaintiffs River Valley and Tyson Farms were not parties to the APA and received no warranties from the Seller Entities. Accordingly, no fraudulent statements were made to them and they could not have been induced to enter into the APA by justifiably relying on warranties contained therein. All of their claims against all Defendants must be dismissed. Similarly, no

representations other than those written warranties in the APA were made to Tyson Poultry. The Complaint is devoid of any specific facts that API made any false representations, known to be false, with the intent of deceiving Tyson Poultry.

2.    The Complaint Cites Unreliable Confidential Sources.

Throughout the Complaint, Plaintiffs refer to information purportedly obtained from numerous unidentified confidential sources. (*See* D.I. 2-2, Ex. B-1 at 22 n.13 ("All individuals not named as a defendant will be referred to anonymously.")). In the context of the heightened pleading requirements for fraud claims, "courts must evaluate the detail provided by the confidential sources, the sources' basis of knowledge, the reliability of the sources, the corroborative nature of other facts alleged, including from other sources, the coherence and plausibility of the allegations, and similar indicia." *Bartesch v. Cook*, 941 F. Supp. 2d 501, 507 (D. Del. 2013) (quotation omitted). "If the allegations do not demonstrate the confidential witnesses' reliability, the Court must discount them steeply." *Id.* (quotation omitted).

Plaintiffs fail to identify the tenure, role, duties, responsibilities, knowledge base, or provide any other basis for the court to assess the reliability of these sources referenced throughout the Complaint. For example, Plaintiffs allege that in the years prior to the APA "API Employee No. 2" raised concerns regarding the use of material in pet food manufacturing and that API may have been risking "civil exposure" in connection therewith. (D.I. 2-2, Ex. B-1 ¶ 54). But the Complaint does not provide any information to permit the Court to assess whether API Employee No. 2 has any qualifications to make such assessments or whether the individual defendants had any reason to take API Employee No. 2's word at face value based on their position, experience, or background. The information in the Complaint derived from these unidentified sources is highly suspect and unreliable and fails to carry Plaintiffs' heavy burden in pleading fraud against API and the other Defendants. *See Cal. Publ. Empls. Ret. Sys. v. Chubb*, 394 F.3d 126, 148 (3d Cir. 2004)

(failure to allege dates of employment or how confidential witnesses acquired information was "problematic" because the court was "left to speculate whether anonymous sources obtained the information they purport to possess by firsthand knowledge or rumor").

3.     The Complaint is Defective Because it Does Not Allege Damages Arising From Purported Fraud that Differ From Damages for Breach of Contract.

Plaintiffs' fraud claims also fail as a matter of Delaware law because they are duplicative of Plaintiffs' breach of contract claims. "Breach of contract claims cannot be bootstrapped into fraud claims[.]" *Collab9, LLC v. En Pointe Techs. Sales, LLC,* No. N16C-12-032, 2019 WL 4454412, at *3 (Del. Super. Ct. Sept. 17, 2019) (granting motion to dismiss fraud claims). "Fraud claims that duplicate contract claims, and seek essentially the same recovery, cannot survive." *Id.* Merely including a "request for punitive damages does not sufficiently distinguish the damages claims to allow a fraud claim to stand." *Heritage Handoff Holdings, LLC v. Fontanella*, No. 1:16-CV-00691-RGA, 2019 WL 1056270, at *5 (D. Del. Mar. 6, 2019).

In their Complaint, Plaintiffs do not adequately plead distinct fraud damages. Instead, Plaintiffs seek the same "compensatory" damages based on the difference between the APA Purchase Price and what Plaintiffs supposedly would have paid for the assets but for the alleged breaches of representations and warranties in connection with the APA for both claims. The only difference is that Plaintiffs seek to avoid the APA's contractual limitation on the amount of recoverable damages with their fraud claims. (*See*, *e.g*., D.I. 2-2, Ex. B-1 at 54-55 (requesting "compensatory damages up to the full amount of funds now held in escrow" for Plaintiffs' breach of contract claims and damages "equal to the difference between the purchase price and the true value of the acquired assets and operations" for Plaintiffs' fraud claims)). Both claims seek the same basket of compensatory damages and are duplicative of one another.

Because Plaintiffs fail to meaningfully distinguish their fraud damages from their breach of contract damages, the fraud claims must be dismissed. *See, e.g.*, *Cornell Glasgow, LLC v. La Grange Properties, LLC*, No. N11C–05–016, 2012 WL 2106945, at *9 (Del. Super. Ct. June 6, 2012) ("These are nothing more than a 'rehash' of Cornell's damages allegations relating to its breach claims. Cornell has failed to plead fraud damages separate and apart from its breach damages. The fraud claim, therefore, must be dismissed for this reason as well."); *EZLinks Golf, LLC v. PCMS Datafit, Inc.,* No. N16C–07–080, 2017 WL 1312209, at *7 (Del. Super. Ct. Mar. 13, 2017) (dismissing fraud claims where plaintiff "has failed to establish how its alleged fraudulent-inducement and breach-of-contract damages are distinct"). The Complaint is insufficient to permit Plaintiffs' fraud claims to proceed.

#### 4. The APA Excludes Reliance on Extra-Contractual Conduct.

Tyson Poultry is prohibited from bringing claims based on alleged extra-contractual conduct or omissions under Sections 5.7 and 11.7 of the APA. Instead, it is limited to the express representations and warranties stated in the APA. The Complaint relies on extra-contractual conduct and must be dismissed.[7]

Delaware courts recognize that an anti-reliance (or exclusive representations) clause and integration clause "combine to mean that the Buyer did not rely on other information" outside the express representations in the APA. *See Prairie Capital III, L.P. v. Double E. Holding Corp.*, 132 A.3d 35, 50-51 (Del. Ch. 2015) (dismissing extra-contractual fraud claims). "When sophisticated

---

[7] The Complaint is replete with vague group pleading references to misrepresentations or omissions ostensibly occurring outside the four corners of the agreement. (*See, e.g.*, D.I. 2-2, Ex. B-1 ¶ 4 (alleging "cover-up" efforts); ¶ 5 (alleging representations "during the diligence period"); ¶ 23 (alleging "concealed" facts); ¶ 58 (alleging effort to conceal process); ¶¶ 99-116 (alleging concealment via supposed "hush money" scheme); ¶ 117 (alleging failure to inform Tyson Poultry about issues); ¶¶ 134-36 (alleging misrepresentations and "omissions"); ¶¶ 140-43 (Count One seeking recovery based, *inter alia*, on omissions); ¶ 147 (Count Two seeking recovery based, *inter alia*, on omissions).

parties contractually disclaim reliance upon representations not included within the four corners of the written agreement, fraud claims based on those representations are barred because any purported reliance upon them is unreasonable as a matter of law." *St. James Recreation, LLC v. Rieger Opportunity Partners, LLC*, No. Civ.A. 19346, 2003 WL 22659875, at *3 (Del. Ch. Nov. 5, 2003) (dismissing claims related to oral statements made during due diligence); *see also Novipax Holdings LLC v. Sealed Air Corp.*, No. N17C–03–1682, 2017 WL 5713307, at *12-13 (Del. Super. Ct. Nov. 28, 2017) (holding that the plaintiff was limited to suing for fraud based on intra-contractual representations and warranties); *3M Co. v. Neology, Inc.*, No. N18C-07-089, 2019 WL 2714832, at *13 (Del. Super. Ct. June 28, 2019) (same). The APA contains such an express disclaimer; therefore, any allegations based on extra-contractual conduct or omissions must be dismissed.

Section 5.7 of the APA, titled "Investigation, states, in relevant part, as follows:





(D.I. 2-2, Ex. B-1, Ex. A § 5.7) (emphasis added). Thus, Section 5.7 expressly disclaims *both* that any extra-contractual representations have been made *and* that Tyson Poultry relied on any such representations, which amounts to an enforceable anti-reliance clause under Delaware law. *See ChyronHego Corp. v. Wight*, No. 2017-0548-SG, 2018 WL 3642132, at *4 (Del. Ch. July 31, 2018) ("[T]he contract must contain language that, when read together, can be said to add up to a clear anti-reliance clause by which the plaintiff has contractually promised that it did not rely upon statements outside the contract's four corners in deciding to sign the contract.") (citation omitted).

APA Section 11.7, entitled "Entire Agreement," is an integration clause which provides:



(D.I. 2-2, Ex. B-1, Ex. A § 11.7) (emphasis added). Section 11.7 confirms that the APA constitutes the entire agreement between the parties and supersedes any extra-contractual agreements or understandings.

Together, Sections 5.7 and 11.7 operate to exclude reliance on any extra-contractual conduct or omissions by Plaintiffs. *See, e.g.*, *Prairie Capital III*, 132 A.3d at 54–55 (contract does not need to use magic word like "omissions" where it contains provisions with a representation-defining effect); *ABRY Partners V, L.P. v. F&W Acquisition LLC*, 891 A.2d 1032, 1034 (Del. Ch. 2006). Accordingly, Tyson Poultry is limited, for purposes of its claims relating to the APA, to the express representations and warranties contained in the agreement. *See Sparton Corp. v. O'Neil*, No. 12403–VCMR, 2017 WL 3421076, at *7 (Del. Ch. Aug. 9, 2017) ("Thus, Sparton may

only rely on 'representations, warranties and statements' included in the Agreement and in the attached documents. Sparton cannot rely on representations made by O'Neil or anyone else before the transaction."). Accordingly, Tyson Poultry may not base its fraud claims on alleged extra-contractual conduct and any such claims must be dismissed.

**B.    Plaintiffs' Civil Conspiracy Claims must be Dismissed.**

Plaintiffs include a vague civil conspiracy claim against API based on the same defectively pled fraud allegations used for all Defendants. For the reasons set forth above, Plaintiffs have failed to plead viable underlying tort (fraud) claims, so the civil conspiracy claim based thereon necessarily fails. *Abbott Labs. v. Owens*, No. 13C–09–186, 2014 WL 8407613, at *11 (Del. Super. Ct. Sept. 15, 2014) ("Because the Court has concluded that Plaintiffs have not pled fraud with the requisite particularity, Plaintiffs' claim for conspiracy must also be dismissed for failure to state a claim.").

"[A] civil conspiracy occurs when there is: (1) a confederation or combination of two or more persons; (2) an unlawful act done in furtherance of the conspiracy; and (3) actual damages. 'Civil conspiracy is not an independent cause of action; it must be predicated on an underlying wrong.'" *Abbott Labs.*, 2014 WL 8407613, at *11. Only allegations of conspiracy which are particularized, such as those addressing the period of the conspiracy, the object of the conspiracy, and certain actions of the alleged conspirators taken to achieve that purpose, will be deemed sufficient. *See*, *e.g.*, *James Julian, Inc. v. Raytheon, Co*., 499 F. Supp. 949, 955 (D. Del. 1980); *Kalmanovitz v. G. Heileman Brewing Co., Inc.*, 595 F. Supp. 1385, 1401 (D. Del. 1984) (dismissing civil conspiracy claim that merely referred back to the preceding paragraphs of the Complaint and stated that they gave "rise to an inference of conspiracy"). It is not sufficient to argue in briefing on motions to dismiss that "'it is implicit' that there was an agreement" between the defendants. *Brug v. Enstar Grp., Inc*., 755 F. Supp. 1247, 1255 (D. Del. 1991).

In Count Two, Plaintiffs vaguely and conclusorily allege: "Defendants conspired with one another and aided and abetted each other in planning and perpetrating the massive fraud alleged in this Complaint." (D.I. 2-2, Ex. B-1 ¶ 144). There are no allegations regarding the nature of the purported agreement or confederation to conspire, the period of the alleged conspiracy, or the actions taken to achieve that purpose. *Cf. Kalamanovitz*, 595 F. Supp. at 1401 (requiring particularized allegations, such as those "addressing the period of the conspiracy, the object of the conspiracy, and certain actions of the alleged conspirators taken to achieve that purpose, will be deemed sufficient"). In effect, Tyson has done little more than refer back generally to the preceding allegations of the Complaint, which was deemed insufficient in *Kalamanovitz*.

Furthermore, "a corporation generally cannot be deemed to have conspired with its officers and agents[.]" *Amaysing Tech. Corp. v. Cyberair Comms., Inc.,* No. Civ. A. 19890-NC, 2005 WL 578972, at *7 (Del. Ch. Mar. 3, 2005). The individual defendants are all alleged to be former officers and/or directors of API.[8] The Complaint contains no specific allegations against Georgia Feed and AMPRO after improperly including them in the definition of API so as to lump them in generally with all of the allegations against Defendants. Accordingly, Plaintiffs' civil conspiracy claim fails as a matter of law as well.

**C.** **Count IV Alleging Breach of Contract Must be Dismissed Because Plaintiffs Fail to Plead that they Have Incurred or Suffered any Recoverable Losses.**

In Count IV, Plaintiffs seek to recover for alleged breaches of representations and warranties contained in the APA. This claim must be dismissed because Plaintiffs fail to plead any valid breach of contract claim, including but not limited to that they have sustained damages that are recoverable under the APA. Article X of the APA is entitled "Indemnification" and defines

---

[8]     *See* D.I. 2-2, Ex. B-1 ¶ 15 (alleging Bagwell to be chairman of API); *id.* ¶ 16 (alleging Mabe to be former CEO of API); *id.* ¶ 17 (alleging Ham to be CEO and President of API); *id.* ¶ 18 (alleging Hull to be CFO of API).

the parties' ██████████████████████████████████████████████████████

██ (D.I. 2-2, Ex. B-1, Ex. A § 10.9).  APA Section 10.3 states, in relevant part, that Buyer shall

not have any recourse against Sellers ████████████████████████████████████

████████████████████████ ███████████████████████████

████████████████████ (*Id.* § 10.3).  Plaintiffs' breach of contract claims are due

to be dismissed at a minimum because Plaintiffs fail to plead that they have incurred or suffered

any recoverable Losses under the APA. (D.I. 2-2, Ex. B-1 ¶ 119 (alleged breach "could potentially

subject API to various forms of liability") (emphasis added)).

## IV.    <u>CONCLUSION</u>

Plaintiffs have failed to adequately plead both their breach of contract, fraud and

conspiracy claims against Defendant API.  Plaintiffs River Valley and Tyson Farms are not even

parties to the underlying APA and have no claims whatsoever, requiring dismissal.  Plaintiffs'

claims against Defendant API must be dismissed.


OF COUNSEL:

J. Allen Maines
Caroline Johnson Tanner
A. Andre Hendrick
Patrick Reagin
Jacquelyn Thomas Watts
Matthew D. Friedlander
HOLLAND & KNIGHT LLP
Regions Plaza, Suite 1800
1180 West Peachtree Street NW
Atlanta, Georgia 30309
(404) 817-8500

Dated: February 24, 2020
Public version dated: March 2, 2020
6583188

POTTER ANDERSON & CORROON LLP

By:  */s/ Philip A. Rovner*
    Philip A. Rovner (#3215)
    Jonathan A. Choa (#5319)
    Hercules Plaza
    P.O. Box 951
    Wilmington, DE 19899
    (302) 984-6000
    provner@potteranderson.com
    jchoa@potteranderson.com

*Attorneys for Defendant*
*American Proteins, Inc.*