IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RIVER VALLEY INGREDIENTS, LLC, TYSON POULTRY, INC., and TYSON FARMS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> AMERICAN PROTEINS, INC. n/k/a CROSSROADS PROPERTIES A, INC., AMPRO PRODUCTS, INC. n/k/a CROSSROADS PROPERTIES B, INC., GEORGIA FEED PRODUCTS COMPANY, L.L.C n/k/a CROSSROADS PROPERTIES C, LLC, THOMAS N. ("TOMMY") BAGWELL, DON MABE, MARK HAM, and MIKE HULL, <br><br> Defendants. | Civil Action No. 19-2358-RGA |

## MEMORANDUM OPINION

Stephen B. Brauerman, Sarah T. Andrade, BAYARD, P.A., Wilmington, DE; Edward S. Sledge IV, Whitt Steineker, Zachary A. Madonia, Hillary C. Campbell, K. Laney Gifford; BRADLEY ARANT BOULT CUMMINGS LLP, Birmingham, AL, Attorneys for Plaintiffs.

Philip A. Rovner, Jonathan A. Choa, POTTER ANDERSON & CORROON LLP, Wilmington, DE; J. Allen Maines, Caroline Johnson Tanner, A. André Hendrick, Matthew D. Friedlander, Patrick B. Reagin, Jacquelyn Thomas Watts, HOLLAND & KNIGHT LLP, Atlanta, GA, Attorneys for Defendants.

May 7, 2020

/s/ Richard G. Andrews
**ANDREWS, UNITED STATES DISTRICT JUDGE:**

Plaintiffs River Valley Ingredients, LLC, Tyson Poultry, Inc., and Tyson Farms, Inc. (collectively, "Tyson") move to remand this action to the Delaware Superior Court. (D.I. 9). I have reviewed the parties' briefing. (D.I. 10, 14, 18). For the following reasons, I will grant Plaintiffs' motion to remand.

## I.     BACKGROUND

The three entity Defendants ("API Entities") are in the business of rendering and blending poultry product and by-product meals for the animal feed and pet food industries. (D.I. 2-2, Ex. B-1 at ¶ 2). In mid-2017, Tyson and the API Entities began negotiations that led to entering into an Asset Purchase Agreement ("the APA"), dated May 14, 2018, pursuant to which Tyson Poultry purchased substantially all of the assets of the API Entities. (*Id.* at ¶ 4, Ex. A). Plaintiffs filed this action in the Delaware Superior Court on December 20, 2019, asserting claims for fraud in the inducement and civil conspiracy against all Defendants, unjust enrichment against the individual Defendants, who were API Executives, and breach of contract against API. (*Id.*). The APA, under which Plaintiffs paid Defendants over $825 million, is at the center of the dispute.

On December 27, 2019, Defendant Mabe removed the action to this Court based on diversity of citizenship. Plaintiffs argue that the APA governing the transaction includes a forum selection clause that requires litigation of all disputes related to the APA in Delaware state court. (D.I. 10 at 1).

The APA states:

Governing Law; Venue. This Agreement (and all claims, controversies and causes of action relating thereto or arising therefrom or in connection therewith, whether in contract, tort or otherwise) shall be interpreted, construed and governed by and

> enforced in accordance with the laws of the State of Delaware without regard to the conflicts of laws rules thereof. Each of the Parties (i) irrevocably consents to the service of the summons and complaint and any other process in any action or Proceeding relating to the transactions contemplated hereby, on behalf of itself or its property, in accordance with Section 11.5 or in such other manner as may be permitted by Law, of copies of such process to such party, and nothing in this Section 11.5 shall affect the right of any Party to serve legal process in any other manner permitted by Applicable Law, (ii) irrevocably and unconditionally consents and submits itself and its property in any action or Proceeding to the exclusive general jurisdiction of the courts of the State of Delaware or, if unavailable, the federal court in the State of Delaware, in each case sitting in Wilmington, Delaware, in the event any dispute arises out of this Agreement or the transactions contemplated hereby, or for recognition and enforcement of any judgment in respect thereof, (iii) agrees that it shall not attempt to deny or defeat such personal jurisdiction by motion or other request for leave from any such court, (iv) agrees that any actions or Proceedings arising in connection with this Agreement or the transactions contemplated hereby shall be brought, tried, and determined only in such courts, (v) waives any objection that it may now or hereafter have to the venue of any such action or Proceeding in any such court or that such action or Proceeding was brought in an inconvenient court and agrees not to plead or claim the same, and (vi) agrees that it shall not bring any action relating to this Agreement or the transactions contemplated hereby in any court other than the aforesaid courts.

(D.I. 2-2, Ex. A at § 11.5).

Mabe is the former CEO of API and retired from this role in 2016. (D.I. 2-2, Ex. B-1 at ¶ 16; D.I. 15 at 1). He remained on the board of directors of API through the closing of the APA. (D.I. 2-2, Ex. B-1 at 16; D.I. 15 at 2). Mabe previously owned 0.13% of the stock of American Proteins, which he redeemed pursuant to a Redemption Agreement before the closing of the APA. (D.I. 15-1, Ex. 1). At the time of the closing of the APA, Mabe was not a shareholder of API and received none of the money paid by any Plaintiff for the purchase of selected assets. (D.I. 15 at 2; D.I. 15-1, Ex. 1).

## II.   LEGAL STANDARD

Section 1447(c) provides, in part:

> A motion to remand the case on the basis of any defect in removal procedure must be made within 30 days after the filing of the notice of removal under section

>1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.

28 U.S.C. §1447(c). While Section 1447(c) neither prohibits nor authorizes an order of remand based on a forum selection clause, Courts have found a remand based on a forum selection clause to be lawful. *Foster v. Chesapeake Ins. Co.*, 933 F.2d 1207, 1215 (3d Cir. 1991).

"[I]f a defendant has removed a case in violation of a forum selection clause, remand is a particularly appropriate and effective remedy for the wrong." *Id.* at 1216. In remanding, the district court "exercise[s] its powers to fashion a remedy for breach of the clause, giving 'effect to the legitimate expectations of the parties, manifested in their freely negotiated agreement, by specifically enforcing the forum selection clause.'" *Id.*, citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12 (1972). "The district court also thereby exercise[s] its inherent powers to correct abuses of federal practice and procedure, vindicating the improper use of removal." *Foster*, 933 F.2d at 1216.

Plaintiffs contend that the APA's forum selection clause requires this Court to remand this action to the Delaware Superior Court and that Defendant's notice of removal is defective. (D.I. 10 at 2).

### III. DISCUSSION

#### A. Mabe Is Bound by the Forum Selection Clause

The APA governing the transaction between the parties includes a forum selection clause that requires litigation of all disputes related to it in Delaware state court, where the forum is available to adjudicate the dispute. (D.I. 2-2, Ex. A at § 11.5).

Under Delaware law, a party may be bound by a forum selection clause even if the party did not sign the agreement containing the clause. "[A] three-part test is used to determine if a non-signatory party is bound by a forum selection clause." *Ninespot, Inc. v. Jupai Holdings Ltd.*,

4

2018 WL 3626325, at *4 (D. Del. July 30, 2018). Courts consider whether: (1) "the forum selection clause [is] valid," (2) the non-signatory is either "a third-party beneficiary of the agreement or closely related to the agreement," and (3) "the claim at hand arise[s] from the non-signatory's status related to the agreement[.]" *Carlyle Inv. Mgmt. LLC v. Moonmouth Co. S.A.*, 779 F.3d 214, 218 (3d Cir. 2015); *see also, e.g.*, *Ninespot*, 2018 WL 3626325, at *4; *Hadley v. Shaffer*, 2003 WL 21960406, at *4 (D. Del. Aug. 12, 2003). "If each of the answers to the three-part test is affirmative, then the party is bound by the forum selection clause." *Ninespot*, 2018 WL 3626325, at *4.

### 1. The Forum Selection Clause Is Valid

First, I consider whether the forum selection clause is valid. Forum selection clauses are "prima facie valid," and are enforced "unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *M/S Bremen*, 407 U.S. at 10; *see also Capital Grp. Cos., Inc., v. Armour*, 2004 WL 2521295, at *6 (Del. Ch. Oct. 29, 2004) (forum selection clauses have been "regularly enforced" in Delaware); *Ninespot*, 2018 WL 3626325, at *4 ("Forum selection clauses carry a high degree of presumed validity."). The parties do not challenge the validity of the forum selection clause in the APA. The forum selection clause in the APA is valid.

### 2. Mabe Is Closely Related to the Agreement

Second, I consider whether the non-signatory is either a third-party beneficiary of the agreement or closely related to the agreement. A non-signatory is considered closely related to an agreement where he or she receives a direct benefit from the agreement. *See Phunware, Inc. v. Excelmind Grp. Ltd.*, 117 F. Supp. 3d 613, 630 (D. Del. 2015); *Capital Grp.*, 2004 WL 2521295, at *6 n.40. Receipt of an indirect benefit to a non-signatory is "insufficient to satisfy the test."

*Neurvana Med., LLC v. Balt USA, LLC*, 2019 WL 4464268, at *4 (Del. Ch. Sept. 18, 2019). Delaware courts also consider whether it was foreseeable to the party that it would be bound by the agreement. *Aviation West Charters, LLC v. Freer*, 2015 WL 5138285, at *4 (Del. Super. Ct. July 2, 2015). Plaintiffs assert that Mabe satisfies the "direct benefit" and "foreseeability" prongs, either of which is independently sufficient to bind him to the forum selection clause. (D.I. 10 at 7).

Courts have found non-signatories to be "closely related" to an agreement if they are a direct beneficiary of the transaction governed by the agreement. *Ninespot*, 2018 WL 3626325, at *4-5. In *Ninespot*, the Court found that the non-signatory was bound by a forum selection clause contained within the transaction agreement because "it stood to receive a direct benefit of shares . . . from the completion of the Stock Purchase Agreement[, and] [t]he receipt of a direct benefit ma[de] [the non-signatory] 'closely related' to the Stock Purchase Agreement." *Id.* In *Weygandt*, the Court found that a direct benefit existed under an asset purchase agreement because its terms required that the plaintiff enter into a separate lease agreement with the non-signatory lessor. *Weygandt v. Weco, LLC*, 2009 WL 1351808, at *5 (Del. Ch. May 14, 2009).

Courts have also found non-signatories to be "closely related" to an agreement in situations where the benefit received was slightly more attenuated. In *Capital Group*, a company allowed one of its employees to transfer his individual stock in the company to a trust for the benefit of himself and his wife. 2004 WL 2521295, at *1. This transfer was "subject to a stock restriction agreement" to which the employee/husband and trust had agreed, but the wife had not signed. *Id.* at *2. When the company sued the wife pursuant to the stock restriction agreement, the court held that she received a direct benefit from the agreement because the stock transfer would not have occurred but for the execution of the agreement. *Id.* at *7.

In contrast, indirect benefits have been deemed insufficient to satisfy the "closely related" test. *Neurvana*, 2019 WL 4464268, at *4. In *Neurvana*, Balt USA acquired Titan pursuant to a purchase agreement. *Id.* The agreement "contemplated" that another company, Balt International, would obtain regulatory approval and sell the Titan medical device in Europe. *Id.* Any profits or benefits Balt International could derive from the agreement would thus only materialize through a separate agreement with Balt USA, and mere "contemplation" of a benefit was not enough to establish a direct benefit. *Id.* The plaintiff "allege[d] no facts indicating that the [non-signatory] received any sort of benefit from the Purchase Agreement, pecuniary or otherwise." *Id.*

Plaintiffs state that Mabe owned 0.13% of the shares of American Proteins, Inc., which owned 79% of the shares of AMPRO Products, Inc. and was the sole member of Georgia Feed Products Company, LLC. (D.I. 10 at 7). Plaintiffs further state that Mabe received a portion of the purchase price from the transaction as a result of his stock ownership in API. (*Id.*). Plaintiffs argue that these facts would constitute a direct benefit in satisfaction of the "closely related" element of the three-part analysis. (*Id.*). Mabe contends that while he did historically own 0.13% of the shares of API, he did not own any shares in API at the closing of the APA and thus did not receive a portion of the purchase price as a result of his stock ownership in API and no direct benefit from the APA. (D.I. 14 at 7; *see* D.I. 15-1, Ex. 1).

Mabe entered into the Redemption Agreement more than three months after the APA was executed. "The evaluation of when a party is 'closely related' to a contract turns on the party's actions after the contract was executed." *Phunware*, 117 F. Supp. 3d at 629. Mabe and API executed a Redemption Agreement[1] on August 19, 2018, one day before the closing of the APA.

---

[1] The Redemption Agreement provides, in relevant part:
   Mabe further acknowledges and agrees that (a) the Purchase Price may be less than or more than the amount that Mabe would have received as dividends or

(D.I. 15-1, Ex. 1). Mabe redeemed all of his shares in API prior to the closing, pursuant to a negotiated value determined by API and Mabe. (*Id.* at ¶¶ 7, 9).

The terms of the Redemption Agreement are expressly conditioned upon the APA transaction's closing. The Redemption Agreement provides:

> 8. <u>Lack of Transaction Closing.</u> If the Purchase Agreement is terminated in accordance with its terms prior to the Tyson closing, then (a) this Agreement shall be null and void, (b) no redemption or payments will be made pursuant to this Agreement, (c) the representations made by Mabe pursuant to Section 2 hereof shall be deemed to have not been made, (d) the consents and waivers made by the parties herein shall be deemed to have not been made and (e) the releases provided by the parties pursuant to Section 6 hereof shall not apply.

(D.I. 15-1, Ex. 1 at ¶ 8). The Redemption Agreement thus ties API's purchase of Mabe's shares back to the APA. (*Id.*). By the express terms of the Redemption Agreement, it does not appear that Mabe would have received $1.1 million but for the closing of the APA transaction. (*Id.*).

Courts have held that a "direct benefit" need not be expressly provided for in the terms of the relevant agreement for a "closely related" determination to be made under Delaware law. *See Ninespot,* 2018 WL 3626325, at *6. In *Capital Group*, the court bound the defendant to a forum selection clause in a stock restriction agreement ("SRA"), even though she was not a party to the SRA and nothing in the SRA's terms provided her a benefit. *See* 2004 WL 2521295, at *7. The court found, however, that the defendant received a direct benefit from the SRA because her interest in the relevant stock stemmed from the execution of the SRA by a trust for which she was a beneficiary. *Id.* Here, Mabe's interest in the APA is clearer because his receipt of any

---

> other distributions from the Company had he remained a shareholder of the Company until after the Tyson Closing and that *as a result of entering into this Agreement Mabe will not be entitled to any proceeds received by the Company as a result of the Purchase Agreement,* (b) the Purchase Price is a negotiated value for the Redeemed Shares *determined by the parties* [. . . ].

(D.I. 15-1, Ex. 1 at ¶ 3) (emphasis added).

benefit under the Redemption Agreement was wholly dependent on the closing of the APA transaction. Mabe's relationship to the transaction is also closer than that of the defendant in *Capital Group*, who had never read the SRA or related documents that contained the forum selection clause. *Id.*, at *3. Here, Mabe executed the Redemption Agreement after the APA was executed, reviewed the APA with his advisor, and approved it as a member of American Proteins' board of directors. (D.I. 15 at Ex. 1, ¶ 3; D.I. 2-2 at § 21(b)). *See Phunware*, 117 F. Supp. 3d at 629.

This case is distinguishable from *Neurvana*, on which Mabe relies, where the court found that the plaintiff failed to demonstrate that the defendant had received a benefit so directly from a purchase agreement as to be bound by the agreement's forum selection clause. 2019 WL 4464268, at *4. In *Neurvana*, the plaintiff "allege[d] no facts indicating that the [non-signatory] received any sort of benefit from the Purchase Agreement, pecuniary or otherwise." *Id*. Here, Plaintiffs allege that Mabe participated in "a decades long scheme that culminated in Tyson being defrauded to grossly overpay for the operations that were the subject of the APA." (D.I. 18 at 6). Plaintiffs allege that at least partially as a result of Mabe's activities, Plaintiffs were fraudulently induced into entering the APA. The APA then triggered Mabe's Redemption Agreement, which had been executed after the APA was executed. *See Phunware*, 117 F. Supp. 3d at 629.

Courts in the Third Circuit have bound non-signatories to forum selection clauses in similar circumstances as those alleged by Plaintiffs in this case. *See, e.g.*, *Synthes, Inc. v. Emerge Medical, Inc.*, 887 F. Supp. 2d 598, 611-12 (E.D. Pa. 2012) (holding non-signatory was bound by a forum selection clause contained in a non-compete signed by individuals with whom the non-signatory conspired to create and run a company that violated the non-compete); *First Fin.*

*Mgmt. Grp., Inc. v. Univ. Painters of Baltimore, Inc.*, 2012 WL 1150131, at *3 (E.D. Pa. Apr. 5, 2012) (recognizing "when signatories and non-signatories act together against the interests of the plaintiff, the non-signatory co-conspirators may also be bound by the forum selection clause").

Plaintiff has demonstrated that Mabe directly benefited from the APA through the receipt of $1.1 million expressly contingent on the closing of the APA transaction. Therefore, Mabe is closely related to the APA and bound by its forum selection clause.

### 3. The Claims Arise from Mabe's Status Related to the APA

Third, I consider whether the claims arise from the non-signatory's status related to the agreement. *See Phunware*, 117 F. Supp. 3d at 629. Mabe argues that he has no status related to the APA because negotiations with Tyson Poultry to enter the APA began after he retired as API's CEO and he is not alleged to have participated in any of the negotiations leading up to the execution of the APA. (D.I. 14 at 12-13).

The "standing" inquiry turns on whether the claims being asserted in the action arise from the agreement at issue. *See Weygandt*, 2009 WL 1351808, at *4 n.15 (recognizing that the meaning of the third prong of the analysis "is that the agreement containing the forum selection clause must also be the agreement that gives rise to the substantive claims brought by or against a non-signatory in order for the forum selection clause to be enforceable against the non-signatory"); *see also Ninespot*, 2018 WL 3626325, at *6 (recognizing claims asserted were based on the agreement at issue). Here, Tyson asserts claims for fraud in the inducement, civil conspiracy, and unjust enrichment against Mabe, arising from the allegation that Defendants fraudulently induced Tyson into entering the APA at an inflated price. (*See* D.I. 2-2 at ¶¶ 21(b), 66, 136-52). Because the underlying claims against Mabe arise out of the APA and his

participation in the alleged fraud, and the APA is the agreement containing the forum selection clause, I find that the claims arose from Mabe's status related to the APA.

In sum, I find that Mabe is bound by the forum selection clause contained in the APA. The clause provides that each party "submits itself and its property in any action or Proceeding to the exclusive general jurisdiction of the courts of the State of Delaware or, if unavailable, the federal court in the State of Delaware . . . ." (D.I. 2-2, Ex. A at § 11.5). As the Court of Chancery has noted, "The doctrine of equitable estoppel prevents a non-signatory to a contract from embracing the contract, and then turning [his] back on the portions of the contract, such as the forum selection clause, that [he] finds distasteful." *Capital Group*, 2004 WL 2521295, at *6. As the state courts are not unavailable, the parties are required to litigate in Delaware state court. Enforcement of the forum selection clause requires remand. I need not reach the parties' additional arguments about the sufficiency of Mabe's notice of removal.

### B. All Defendants Are Bound by the Forum Selection Clause

The right to remove may be waived. *Foster*, 933 F.2d at 1216. By entering into the APA, the parties "irrevocably and unconditionally consent[ed] and submit[ted]" themselves to the "exclusive general jurisdiction" of Delaware state court. (D.I. 2-2, Ex. A at § 11.5). *See Foster*, 933 F.2d at 1216-17. The Delaware state courts are available to the parties. Defendants have thus waived their right to remove the action. Enforcement of the forum selection clause requires remand.

### IV. CONCLUSION

For the foregoing reasons, I will grant Plaintiffs' motion to remand. An accompanying order will be entered.